## McIntyre *v.* Hamilton, Appellant.

*Negligence—Pollution of stream—Personal injuries—Case for jury.*

1. In an action by an employee of a bridge contractor against the proprietors of a paper mill to recover damages for personal injuries, the case is for the jury where the evidence tends to show that the plaintiff at the time the injuries were sustained was working in a shallow stream below the defendants' mill; that acids had escaped from the mill, and came in contact and burnt the plaintiff's person; and that although boots were provided for plaintiff he had no information of any danger, other than that from wet feet, if he failed to use them.

2. In such a case evidence as to the quality of the water in the stream is admissible although referring to other occasions than the one on which the plaintiff was injured, if it appears that the defendants testified that no liquid of any kind of a harmful character was discharged from the mill into the stream.

Argued Dec. 3, 1913. Appeal, No. 222, Oct. T., 1913, by defendants, from judgment of C. P. Montgomery Co., June T., 1912, No. 7, on verdict for plaintiff in case of John G. McIntyre v. Charles L. Hamilton et al., trading as W. C. Hamilton & Sons. Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before REED, P. J.

At the trial the jury returned a verdict for $289.

On motion for judgment n. o. v. REED, P. J., filed the following opinion:

The defendants obtained a rule for new trial on condition that reasons therefor would be filed within ten days after the testimony and charge of the court had been transcribed and filed of record. No reasons were filed within the time fixed, and counsel stated on the argument of the rule for judgment non obstante veredicto that the motion for a new trial had been abandoned. The only matter for determination, therefore, is the rule taken for judgment in favor of the defendants notwithstanding the verdict.

It is very earnestly contended that there was no evidence of negligence on the part of the defendants to warrant the submission of this question to the jury and that the evidence of the plaintiff's contributory negligence was so clear and undisputed as to require the pronouncement of the court upon it. Both these contentions were made on the trial of the cause and it was my opinion then, and after careful consideration of the testimony and the arguments of counsel thereon I am still of the opinion, that the case could not have been taken from the jury without committing reversible error. It was conceded then and is admitted now that the defendants were responsible for putting in the water in which the plaintiff was wading or standing while performing his work the substances, whatever they were, which the plaintiff alleges struck and burned him before he could get out of the way of the same. This was a small stream which ordinarily only had a few inches of water in it. The concrete bridge on which the plaintiff was working at the time of the accident was being constructed at a point about eighty feet down the stream from the defendant's mill and in plain view of it. The work had been going on for at least several weeks prior to the accident. In constructing the bridge it had been found advantageous and convenient to make some changes in the course of the stream flowing under it.

The only reasonable inference from all the facts and circumstances in evidence is that the defendants were perfectly familiar with the situation and with the work of constructing this bridge as it was being carried on there, and also that the facts as known to them put them on notice that the workmen on the bridge would or might have occasion to go into or come in contact with the water in this stream. Notwithstanding this, it is not pretended that they gave them any notice or warning that it would be unsafe or dangerous for them to do so. Under the circumstances stated it seems clear to me that the jury was warranted in finding the defendants guilty of negligence if satisfied from the weight of the evidence that they, without notice or warning of any kind, discharged into this stream of water the substance that burned the plaintiff or produced the injuries he testified he sustained while wading or standing in it. The fact that the defendants owned the land through which this stream flowed at the point of accident makes no difference. The plaintiff was not a trespasser on or in the stream. He was lawfully there at the time, and it was the duty of the defendants to protect him against injury through their negligence while he was lawfully there in the discharge of the duties of his employment. Counsel for the defendants practically concede all this, but insist that there is no evidence to show that the defendants put into this stream anything harmful or that would cause the injuries which the plaintiff alleges he sustained. This is what the defendants' counsel on the argument designated as the crux of the case. It is the main pin on which the defendants hang their defense. The testimony on the part of the plaintiff is that while he and other workmen were standing in the water removing concrete forms a black stream of water came down and struck and burned him before he could get out of the way of it. Without quoting or making an extensive reference to the testimony, it may be stated that evidence was offered to show that a black

liquor was made in the mill, which contained caustic soda or other substance that would burn flesh and eat holes in clothing; also that quantities of this black liquor sometimes escaped and got into the stream of water in which the plaintiff was standing at the time he alleges he was burned. There was testimony offered by the defendants to show that black liquor and black water were two different things: that while black liquor would burn, black water was entirely harmless, and that it was the latter which the defendants discharged into the stream; that caustic soda was an exceedingly valuable substance and that not a drop of it was permitted to escape, and that black liquor could only get into the stream through some accident happening in the mill, and that none happened on the day the plaintiff alleges he was burned. The plaintiff offered testimony to show that sometimes there was an overflow of this black liquor, and that this might occur as often as once or twice a week, and when there was an overflow it went into the stream. There was also testimony to the effect that the discharges from the defendants' mill so affected the water that it took the paint off boats and that it softened and ate into wood immersed in it. But, aside from this testimony, it is to be noted that the operation of this mill and the discharges from it into the stream were under the sole and absolute control of the defendants; and while the defendants' testimony is that no harmful or dangerous substances were discharged into the stream, the plaintiff's testimony is that he was burned and injured by these discharges notwithstanding the defendants' testimony that they were not injurious. The condition that the plaintiff is bound to show what the injurious substance was cannot be sustained. Its effect upon the plaintiff's person, as described by him and his witnesses, is at least some evidence that it did injuriously affect the water; and the credibility of the witnesses and the weight to be given to their testimony under all the facts and circumstances

in evidence raised a question for the jury and not for the court to pass upon.

Regarding the contributory negligence of the plaintiff little need be said. The question was submitted to the jury with careful instructions on the subject. It is contended that gum boots were furnished by the contractors for use by their employees, and that the plaintiff was guilty of negligence because he did not put on a pair of these boots before going into the water. But the boots were not provided for or used by employees to protect them against injurious substances in the water. It does not appear that the plaintiff or any other person working on the bridge knew that the water was dangerous or unsafe to wade in. The only apparent danger of wading in it, so far as the evidence disclosed, was that of getting wet feet. The defendants' contention that the plaintiff should have known that the waste and offal from their mill was going into the stream and should have made some inquiry as to the condition of the water before going into it conflicts somewhat with their contention that nothing harmful from their mill was put into the stream. This, it must be presumed, would have been the information that the plaintiff would have obtained upon inquiry made of the defendants. Both the question of the defendants' negligence and of the plaintiff's contributory negligence, as I view the evidence, were for the jury; and no complaint is made as to the manner of their submission.

And now, October 6, 1913, the defendants' rule for judgment non obstante verdicto is discharged, and judgment is directed to be entered on the verdict in favor of the plaintiff and against the defendants upon payment of the jury fee.

*Error assigned* was in refusing judgment for defendants n. o. v.

*N. H. Larzelere,* with him *Charles Townley Larzelere* and *Franklin L. Wright,* for appellant.—If there is any

other cause apparent to which the injury may, with equal fairness be attributed, the inference of negligence cannot be drawn: East End Oil Co. v. Penna. Torpedo Co., 190 Pa. 350; Alexander v. Penna. Water Co., 201 Pa. 252; Savitz v. R. R. Co., 199 Pa. 218; Ault v. Cowan, 20 Pa. Superior Ct. 616; Snodgrass v. Steel Co., 173 Pa. 228.

*Charles D. McAvoy,* for appellee.—The circumstances connected with the happening of the accident were sufficient to submit the case to the jury: McCoy v. Ohio Valley Gas Co., 213 Pa. 367; Shafer v. Lacock, 168 Pa. 497; Eardley v. Keeling, 10 Pa. Superior Ct. 339.

OPINION BY HEAD, J., April 20, 1914:

The able counsel for appellant urges here, as he did in the court below, the two propositions that there was no evidence of any negligent act by the defendants to warrant a submission of the case to the jury and that the trial court should have declared, as matter of law, that the plaintiff had been guilty of contributory negligence. The opinion filed by the trial judge (REED, P. J., fifty-fourth district, specially presiding) discharging the rule for judgment non obstante veredicto appears to us to satisfactorily answer both of these contentions. That the plaintiff was seriously burned about his feet and legs whilst working in the stream below defendants' mills, there is ample testimony, if credible, to prove. That these burns exhibited at least some of the characteristics peculiar to burns caused by acid rather than fire, there was expert testimony to establish. It is true rubber boots were provided for the plaintiff if he chose to wear them. The injury occurred in August. The water was quite shallow. The plaintiff testified his understanding was the boots were provided merely to keep his feet dry. He had no information of any danger, beyond wet feet, threatening him if he failed to use the boots. The opinion of the court points out the testi-

mony on both branches of the plaintiff's case. We agree that under the evidence referred to the court below could not have with propriety done otherwise than submit to the jury the questions of the negligence of the defendant and the contributory negligence of the plaintiff. As a consequence there could have been no binding direction, and the first, second, fifth and sixth assignments must be overruled.

The third assignment complains of the action of the trial court in admitting, over the objection of the defendant, certain evidence as to the quality of the water in the stream. It is true this testimony refers to other occasions than the one on which the plaintiff was injured. Does it necessarily follow that the evidence was irrelevant? The line of the defense was that no liquid of any kind of a harmful character was discharged from the mill into the stream. Their contention was that the only liquid used in the mill operations of such character was what is called "black liquor," and that this was so extremely valuable that practically every drop of it was carefully reclaimed within the mill and no portion of it allowed to escape under any circumstances. If this were true, it would of course most strongly discredit the plaintiff's testimony that the burns of which he complained were caused by the action of the water in which he was standing while at work. On the other hand, if it could be shown that the theory of the defense in the respect indicated was not founded on fact, and that the refuse liquids discharged into the stream from time to time were of a character to do mischief, the strength of the defense would be greatly impaired and the position of the plaintiff correspondingly strengthened. The learned trial judge therefore received the testimony offered "for the purpose of showing whether the character of the water is injurious to inanimate matter." The evidence in kind was unobjectionable. That is to say, it possessed intrinsic probative value, and we are not prepared to say that the fact which it tended to estab-

lish was so remote from the issue, as the parties had made it up, that its admission by the trial judge should be declared reversible error. The third and fourth assignments are dismissed.

Judgment affirmed.